## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

JOSEPH P.,

        *Plaintiff,*

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

        *Defendant.*

_____/

Case No. 1:25-cv-10744

Patricia T. Morris
United States Magistrate Judge

## MEMORANDUM OPINION AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)

## I.    CONCLUSION

For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 12) is **DENIED**, the Commissioner of Social Security's motion for summary judgment (ECF No. 14) is **GRANTED**, and the decision of the administrative law judge (ALJ) is **AFFIRMED**.

## II.    ANALYSIS

### A.    Introduction and Procedural History

On January 3, 2022, Plaintiff filed an application for supplemental security income and disability insurance benefits, alleging he became disabled on September

1

20, 2013.[1]  (ECF No. 11-1, PageID.4170).  The Commissioner initially denied the application on August 24, 2022, and on reconsideration on July 13, 2023.  (*Id.*).  Plaintiff then requested a hearing before an ALJ, which was held telephonically on January 23, 2024.  (*Id.*).  The ALJ issued a written decision on March 27, 2024, finding Plaintiff was not disabled.  (*Id.* at PageID.4170–84).  Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied the request on January 27, 2025.  (*Id.* at PageID.4154–56).

Following the Appeals Council's denial of review, Plaintiff sought judicial review on March 17, 2025.  (ECF No. 1).  The parties consented to the Undersigned "conducting any or all proceedings in this case, including entry of a final judgment and all post-judgment matters."  (ECF No. 8).  The parties have since filed cross-motions for summary judgment for which briefing is complete.  (ECF Nos. 12, 14, 15).

**B.    Standard of Review**

District courts have jurisdiction to review the Commissioner's final administrative decisions pursuant to 42 U.S.C. § 405(g).  The review is restricted

---

[1] Plaintiff only met the insured status requirements of the Social Security Act through December 31, 2017.  (ECF No. 11-1, PageID.4172).  Therefore, he was only eligible for disability insurance benefits—if in fact eligible—if he was found to be disabled prior to the end of this period.  *See* 42 U.S.C. § 423.  The period of eligibility for supplemental security income does not begin until the first full month after the application is filed.  *See* 20 C.F.R. § 416.335.  Thus, the second period began on Plaintiff's application date.

solely to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (citation modified). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citation modified). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified).

A district court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). Courts will "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* (citation modified).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v.*

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, [the ALJ] consider[s] [the claimant's] work activity, if any.  If [the claimant is] doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.
>
> (ii) At the second step, [the ALJ] consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled.
>
> (iii) At the third step, [the ALJ] also consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant has] an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement, [the ALJ] will find that [the claimant is] disabled.
>
> (iv) At the fourth step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . past relevant work. If [the claimant] can still do . . . past relevant work, [the ALJ] will find that [the claimant is] not disabled.
>
> (v) At the fifth and last step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work.  If [the claimant] can make an adjustment to

other work, [the ALJ] will find that [the claimant is] not disabled.  If [the claimant] cannot make an adjustment to other work, [the ALJ] will find that [the claimant is] disabled.

20 C.F.R. § 404.1520(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  The claimant must provide evidence establishing his or her residual functional capacity (RFC), which "is the most [the claimant] can still do despite [his or her] limitations," and is assessed using "all the relevant evidence in [the] case record."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined Plaintiff was not disabled.  (ECF No. 11-1, PageID.4184).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 20, 2013, the alleged onset date.  (*Id.* at PageID.4173).  At step two, the ALJ found Plaintiff had the following severe impairments during the insured period (September 20, 2013–December 31, 2017): cervical degenerative disc disease, coronary artery disease (CAD), and hypertension.  (*Id.*).  As of the period beginning on January 3, 2022, the application date for supplemental security income, the ALJ found the following severe impairments: cervical degenerative disc disease, osteoarthritis of the bilateral shoulders, right hip impingement syndrome, CAD, hypertension, bipolar disorder, major depressive disorder (MDD), generalized anxiety disorder (GAD), and obsessive-compulsive disorder (OCD).  (*Id.*).

At step three, the ALJ found none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing.  (*Id.* at PageID.4174–76).  Next, the ALJ found that from September 20, 2013, to December 31, 2017, and from January 3, 2022, to the date of decision, Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional limitations.  He could occasionally balance (as defined by the Selected Characteristics of Occupations (SCO)), stoop, kneel, crouch, crawl, and climb ramps or stairs, but could never climb ladders, ropes, or scaffolds.  He could have no exposure to extreme cold/heat, vibration or vibrating tools, unprotected heights, or moving mechanical

6

parts.  He could not operate a motor vehicle within the scope of employment.  He was limited to "low stress" work defined as simple, routine, and repetitive tasks in an environment free from fast-paced production (i.e. assembly line or conveyor belt work), involving simple work-related decision-making and occasional workplace changes.  He could have occasional contact with supervisors, co-workers, and the general public.

(*Id.* at PageID.4176, 4178–79).[2]

At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  (*Id.* at PageID.4182).  However, at step five, the ALJ found other jobs in the national economy that Plaintiff could perform.  (*Id.* at PageID.4183).  Specifically, the ALJ found Plaintiff could perform the requirements of a routing clerk (42,000 jobs in the national economy), a labeler/marker II (26,000), and a cafeteria worker/attendant (51,000).  (*Id.*).  The ALJ thus concluded Plaintiff was "not disabled."  (*Id.* at PageID.4184).

## E.    Administrative Record

Plaintiff raises several issues on appeal.  First, he argues the ALJ improperly discounted some of his subjective complaints.  Second, he argues the ALJ did not address all of his medical impairments in either period of disability applied for.  Third, Plaintiff argues the ALJ's RFC analysis did not reflect the maximum he can do on a regular and continuing basis.  Fourth, he argues the vocational expert's testimony is not based on substantial evidence because of the improper RFC.

---

[2] The only difference between the RFCs is whether they are written in past or present tense.

Finally, he argues the ALJ improperly considered a prior consultative examiner's opinion. While the Court has reviewed the entire record, it will only summarize the evidence relevant to Plaintiff's issues on appeal as necessary below.

### F.   Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources. An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed psychologist, which includes:

    (i)    A licensed or certified psychologist at the independent practice level; or

    (ii)    A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the

foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only.  For this source, *qualified* means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language Pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only . . . ;

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice . . . .

20 C.F.R. § 404.1502(a) (2021).  A medical source is

an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d).  In contrast, a nonmedical source is "a source of evidence who is not a medical source."  *Id.* § 404.1502(e).  "This includes, but is not limited to: (1) [the claimant];  (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy."  *Id.*

The Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* § 404.1520c(a). "The most important factors [the SSA] consider[s] when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.* § 404.1520c(c).

The first factor is "supportability." For this factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with the

claimant." *Id*. § 404.1520c(c)(3).  This factor includes analysis of:

(i)     Length of the treatment relationship.  The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii)    Frequency of examinations.  The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii)   Purpose of the treatment relationship.  The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv)    Extent of the treatment relationship.  The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)     Examining relationship.  A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder.

*Id.*

The fourth factor of the SSA's analysis is "specialization."  In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

11

*Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors."  These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding."  *Id.* § 404.1520c(c)(5).  Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  *Id.*  Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive."  *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements."  The ALJ will consider "source-level articulation."  Pursuant to this requirement,

> [b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record.  Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the

factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

*Id.* § 404.1520c(b)(1).  The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually."  *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2).  As such, the SSA

> will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision.  [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision."  *Id.*

13

§ 404.1520c(b)(3).  The regulations clarify that the SSA is "not required to articulate how [it] considered evidence from nonmedical sources using the requirements of paragraphs (a)–(c) of this section."  *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c."  *Id.* § 404.1520b(c).  The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities"; "[d]isability examiner findings," meaning "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [the claimant is] disabled"; and "[s]tatements on issues reserved to the Commissioner[,]" including

> (i)   Statements that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work;
>
> (ii)  Statements about whether or not [the claimant has] a severe impairment(s);
>
> (iii) Statements about whether or not [the claimant's] impairment(s) meet the duration requirement . . . ;
>
> (iv)  Statements about whether or not [the claimant's] impairment(s) meets or medically equals any listing in the Listing of Impairments . . . ;
>
> (v)   Statements about what [the claimant's] residual functional

14

capacity is using [the SSA's] programmatic terms about the functional exertional levels . . . instead of descriptions about [the claimant's] functional abilities and limitations . . . ;

(vi)    Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work . . . ;

(vii)   Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule . . . ; and

(viii)  Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review.

*Id.* § 404.1520b(c)(3).

The regulations also provide that

[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504.   Therefore, the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.* The SSA will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim . . . ." *Id.*

The regulations clarify that "[o]bjective medical evidence means signs,

15

laboratory findings, or both." *Id.* § 404.1502(f).  Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." *Id.* § 404.1502(g).  Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.*  Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," which "include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain:

> In determining whether [the claimant is] disabled, [the SSA will] consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  [The SSA] will consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work.

*Id.* § 404.1529(a).  But the SSA clarified that

> statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled.  There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.*  Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]." *Id.*  The SSA will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it] will carefully consider any other information [the claimant] may submit about [his or her] symptoms." *Id.* § 404.1529(c)(3).  This other information may include "[t]he

information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or aggravate [the claimant's] symptoms, what medications, treatments or other methods [the claimant uses] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living," which "is also an important indicator of the intensity and persistence of [the claimant's] symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons.

*Id.* Factors relevant to a claimant's symptoms, such as pain, include:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain or other symptoms;

(vi)    Any measures . . . used to relieve . . . pain or other symptoms.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get benefits, [the claimant] must follow treatment prescribed by [his or her] medical source(s) if this treatment is expected to restore [his or her] ability to work." *Id.* § 404.1530(a). Stated differently, "[i]f [the claimant does] not follow the prescribed treatment without a good reason, [the SSA] will not find [the claimant] disabled or, if [the claimant is] already receiving benefits, [the SSA] will stop paying . . . benefits." *Id.* § 404.1530(b). Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)   The specific medical treatment is contrary to the established teaching and tenets of [the claimant's] religion;

(2)   The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)   Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)   The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for [the claimant]; or

(5)   The treatment involves amputation of an extremity, or a major part of an extremity.

*Id.* § 404.1530(c).

### G.   Argument and Analysis

19

As discussed above, Plaintiff argues the ALJ improperly discounted some of Plaintiff's subjective complaints.  Second, he argues the ALJ did not address all of his medical impairments in either period of disability asserted.  Third, Plaintiff argues the ALJ's RFC analysis did not reflect the maximum he can do on a regular and continuing basis.  Fourth, he argues the vocational expert's testimony is not based on substantial evidence because of the improper RFC.  Finally, he argues the ALJ improperly considered a prior consultative examiner's opinion.  The Court will begin with Plaintiff's second, third, and fourth arguments.

### 1.    Waiver

Plaintiff's arguments regarding his medical impairments, the RFC analysis, and the vocational expert's testimony are waived.  The entirety of Plaintiff's "Analysis" on these arguments follows:

> Plaintiff takes issue with the ALJ not addressing all of his medical impairments either before or after the DLI.
>
> Further, Plaintiff takes issue with the RFC as it does not reflect the maximum he can do on a regular and continuing basis with his medical impairments.
>
> Finally, because the RFC isn't based on a proper analysis of his medical conditions, with an improper RFC, the vocational witness' testimony is not based on substantial evidence and therefore is inaccurate.
>
> .    .    .
>
> SSR 96-8p defines an RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL

374184, at *1.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.; see also 20 C.F.R.  § 404.1520a(c)(2) ("We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis.").  Although the ALJ may properly consider Miller's household and social activities when "evaluating a claimant's assertions of pain or ailments," *Keeton* [*v. Comm'r of Soc. Sec.*], 583 F. App'x [515,] at 532 [(6th Cir. 2014)] (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)), the ALJ must establish that [claimant] could have performed such activities on a "sustained basis" when assessing Miller's mental impairments, see *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013).

(ECF No. 12, PageID.8311–8312).

These arguments are inadequate to properly raise these issues on appeal.  The Sixth Circuit has dismissed similarly insufficient arguments:

Hollon's final contention on appeal is that the Commissioner's decision to discontinue Joseph's benefits is not supported by substantial evidence in the administrative record.  This challenge warrants little discussion, as Hollon has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record.  Under these circumstances, we decline to formulate arguments on Hollon's behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence.  Rather, we limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006).

In other words, courts "routinely decline to consider perfunctory arguments of this sort."  *Brenay v. Schartow*, 709 F. App'x 331, 336–37 (6th Cir. 2017) (collecting

cases and explaining that "it is not for the court to search the record and construct arguments. Parties must do that for themselves."); *see also Marko v. Comm'r of Soc. Sec.*, No. 16-cv-12204, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (refusing to search the 800-page administrative record for arguments or evidence beneficial to plaintiff); *Deguise v. Comm'r of Soc. Sec.*, No. 12-cv-10590, 2013 WL 1189967 (E.D. Mich. Feb. 19, 2013), *report and recommendation adopted*, 2013 WL 1187291 (E.D. Mich. Mar. 22, 2013). The record here is nearly 5,000 pages spanning over a decade. The Court thus deems these arguments waived and will not scour the record without even the barest effort by Plaintiff's counsel to develop these issues for appeal.

In the same vein, Plaintiff attempts to raise a number of issues for the first time in his reply brief. His reply brief lists nine errors he alleges the ALJ made. (ECF No. 15, PageID.8336). However, "issues raised for the first time in reply are deemed waived." *Williams Huron Gardens 397 Tr. v. Twp. of Waterford*, No. 18-12319, 2019 WL 2051967, at *9 (E.D. Mich. Feb. 28, 2019) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)), *report and recommendation adopted sub nom.*, *Williams Huron Gardens 397 Tr. v. Waterford Twp.*, 2019 WL 1324242 (E.D. Mich. Mar. 25, 2019). Thus, Plaintiff's new arguments are waived.

Similarly, in the "medical evidence" section of Plaintiff's initial brief on appeal, he discusses medical evidence that was never placed in the record. (ECF

No. 12, PageID.8310).  In no way does he present whether the records should be considered as an issue on appeal nor does he provide any analysis in the body of his brief on this issue.  Instead, Plaintiff waited until his reply brief to provide legal analysis and citations on this issue.  (ECF No. 15, PageID.8337).  Thus, this issue is also waived (as are other issues discussed above that Plaintiff only tries to develop in his reply brief).  *See Williams v. City of Grand Rapids*, 672 F. Supp. 3d 395, 411–12 (W.D. Mich. 2023) (deeming waived an argument developed in a reply brief which only initially appeared as a footnote in his initial brief "devoid of any legal standards, citations, or analysis").

### 2.   Plaintiff's Subjective Complaints

Plaintiff argues the ALJ improperly "discounted [his] statements about fatigue, pain, and other limiting symptoms because he was back to playing racquetball regularly."  (ECF No. 12, PageID.8310).  He argues the medical records only support a small window of time in which he was able to play racquetball.  (*Id.*).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility" as long as the assessment is supported by substantial evidence.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Saunders v. Kijakzi*, No. 20-cv-12210, 2022 WL 885838, at *3 (E.D. Mich. Mar. 25, 2022) ("'It is of course for the ALJ, and not the

reviewing court, to evaluate the credibility of witnesses, including that of the claimant.'" (quoting *Rogers.*, 486 F.3d at 247)).

Even taking the ALJ's statement about racquetball out of the decision, it was still supported by substantial evidence. Plaintiff reported his conditions cause him to experience pain, weakness, and fatigue, among other symptoms, and that he has difficulty lifting, sitting, standing, walking, bending, squatting, kneeling, reaching, and climbing stairs. (ECF No. 11-1, PageID.4177). The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other record evidence. (*Id.*).

As an initial matter, the ALJ only discussed racquetball once in her discussion of the alleged disability period from 2013 to 2017. (*See id.* at PageID.4177). Plaintiff does not make any arguments about the ALJ's consistency findings during the alleged disability period from 2022 through the present. The Court will thus focus only on the period between 2013 and 2017.

Besides racquetball, the ALJ considered several other pieces of evidence in finding Plaintiff's statements not entirely consistent during this period. First, in the same paragraph discussing racquetball, the ALJ also discussed that Plaintiff denied experiencing any cardiac symptoms at follow up visits for his CAD and hypertension. (*Id.*). The ALJ then discussed a myocardial infraction Plaintiff

experienced in March 2017, and noted that his condition improved as reported at follow-up visits. (*Id.*). Additionally, the ALJ discussed that only one record during this time reflected complaints of upper back pain but that the same record also reflected Plaintiff later reported feeling better and other treatment records showed no further treatment or complaints during this time. (*Id.* at PageID.4178). The ALJ concluded his cardiac incidents "ha[d] been treated conservatively, with no need for significant intervention. Similarly, his back and/or neck pain was treated conservatively as well." (*Id.*). Plaintiff does not challenge any of these findings on appeal, and even standing alone, these findings are substantial evidence in support of the ALJ's finding that Plaintiff's statements concerning the intensity and persistence of his symptoms were not entirely consistent with the record. *Accord Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (upholding ALJ's decision discrediting claimant's subjective assessment of pain even though one of the two stated reasons was in error because the other stated reason was supported by substantial evidence).

### 3.    Prior Medical Opinion

Finally, Plaintiff argues the ALJ did not fully consider limitations the state agency's consultative examiner opined were necessary. (ECF No. 12, PageID.8311). Specifically, Plaintiff argues the ALJ left out the examiner's statements that "'[t]he claimant reported marked limitation in social interaction, and

severe limitation in adapting or managing oneself.  The claimant's ability to perform work may be predominantly impacted by any other physical or medical limitations.'"  (*Id.* (quoting ECF No.11-3, PageID.7967)).  Plaintiff argues the ALJ erred in not addressing these statements and that the ALJ had no basis to determine Plaintiff had only moderate limitations in these areas when the other examiner concluded he had "marked" and "severe" limitations.  (*Id.*).

As a refresher, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  An ALJ must explain his or her approach with respect to supportability and consistency when considering a medical opinion.  *Id.* § 404.1520c(b).  Importantly, the ALJ is "not required to articulate how [he or she] considered evidence from nonmedical sources using the requirements" above.  *Id.* § 404.1520c(d).  A nonmedical source is "a source of evidence who is not a medical source," which includes the claimant.  *Id.* § 404.1502(e).

Plaintiff underwent a psychological evaluation in June 2023 with Dr. Mitchell Solomon.  At the end of his report summarizing this evaluation, Solomon made the following statement:

> Based upon today's examination, it is determined that [Plaintiff] demonstrated mostly mild limitation in understanding, remembering, and applying information.  He appeared to have at most mild limitation in concentration, persistence, and pace. *The claimant reported* marked

limitation in social interaction, and severe limitation in adapting or managing oneself.  The claimant's ability to perform work may be predominately impacted by any other physical or medical limitations.

(ECF No. 11-3, PageID.7967 (emphasis added)).  The ALJ discussed Solomon's report as follows:

Following the consultative examination in June 2023, the examiner offered an opinion on the claimant's functioning.  He stated that the claimant had mostly mild limitation in understanding, remembering, or applying information, and at most mild limitation in concentration, persistence, and pace.  He further opined that his ability to work may be predominantly impacted by other physical or medical limitations. The undersigned finds this opinion to be minimally persuasive.  It is not entirely consistent with or supported by the exam findings or the overall medical record.  The claimant has had ongoing complaints of memory and concentration difficulties and was observed to have an increased activity level during the consultative exam.  Treatment notes also show how his mood has impacted his interactions with others and that he has some deficits stemming from his prior strokes.  Overall, the evidence supports that moderate limitations exist.

(ECF No. 11-1, PageID.4181–82 (internal citations omitted)).

Reading Solomon's report does not leave the Court with the same conclusion Plaintiff reached.  Instead, the report shows Solomon did not opine Plaintiff had a marked limitation in social interaction and a severe limitation in adapting or managing oneself, he merely *relayed* Plaintiff's self-reported impairments without comment.

Plaintiff relies on *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989), for the proposition that a psychiatrist's report should not be rejected merely because of the absence of substantial documentation or the relatively imprecise nature of

psychiatric methodology.  While this may be true, here Solomon was not giving his opinion or diagnosis, he was merely repeating Plaintiff's own report as to the severity of his own limitations.  This is not a medical opinion.  "Regardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and re-package it as an opinion."  *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629 (6th Cir. 2016) (citing *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) ("Dr. Killefer's pain-related statement, on the other hand, is not a 'medical opinion' at all—it merely regurgitates Francis's self-described symptoms.")); *see also* 20 C.F.R. § 404.1502(e).

The Court notes two other points.  First, Solomon admitted his diagnoses were limited by the sparse information he had at the time of examination: "The claimant's referral included 2 medical progress notes . . . .  There were *no other records* available at the time of the evaluation *to confirm any of the* [*Plaintiff's*] *information*." (ECF No. 11-3, PageID.7964 (emphasis added)).   In other words, Solomon's evaluation of Plaintiff was admittedly impeded by the lack of records.  Second, as to Solomon's actual recommendations, the ALJ rejected them and imposed *more restrictive* limitations.  "An ALJ's more restrictive finding than that of the state agency physician's may be len[t] as support for the ALJ's finding."  *McCoy v. Kijakazi*, No. 21-11739, 2023 WL 3407159, at *7 (E.D. Mich. Feb. 27, 2023) (collecting cases), *report and recommendation adopted*, 2023 WL 3147899 (E.D.

Mich. Apr. 28, 2023).  Therefore, Plaintiff has not shown the ALJ erred.

**III.**   **ORDER**

For these reasons, Plaintiff's motion (ECF No. 12) is **DENIED**, the Commissioner's motion (ECF No. 14) is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: February 3, 2026                    S/PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge